TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and
potential Rule 23 Class*

**Case No. 19-cv-05018**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT COURT OF NEW YORK**
 ---------------------------------------------------------------- x

YINGCAI HONG,
*on his own behalf and on behalf of others similarly
situated*

          Plaintiff,

         v.

JP WHITE PLAINS, INC.
   d/b/a Haiku Asian Bistro White Plains;
HAIKU @ WP INC.
   d/b/a Haiku Asian Bistro White Plains;
JP BRONXVILLE INC.
   d/b/a Haiku Asian Bistro Bronxville; and
JP SCARSDALE INC.
   d/b/a Haiku Asian Bistro Scarsdale;
SOONWAH LEE
   a/k/a/ Michael Lee,
PIETRO DIANA
   a/k/a Peter Diana,
HSINGYA CHANG
   a/k/a/ John Chang, and
JIE ZHANG
   a/k/a/ Jack Zhang

         Defendants.

 ---------------------------------------------------------------- x

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**


**COMPLAINT**

    Plaintiff YINGCAI HONG (hereinafter referred to as Plaintiff), on behalf of himself and

others similarly situated, by and through his attorney, Troy Law, PLLC, hereby brings this

complaint against Defendants HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP

WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a

Haiku Asian Bistro Bronxville; and JP SCARSDALE INC. d/b/a Haiku Asian Bistro

ScarsdaleSOONWAH LEE a/k/a/ Michael Lee, PIETRO DIANA a/k/a Peter Diana, HSINGYA

CHANG a/k/a/ John Chang, and JIE ZHANG a/k/a/ Jack Zhang, and alleges as follows:

## <u>INTRODUCTION</u>

1.     This action is brought by the Plaintiff YINGCAI HONG, on behalf of himself

as well as other employees similarly situated, against the Defendants for alleged violations of

the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law

(NYLL), arising from Defendants' various willfully and unlawful employment policies,

patterns and practices.

2.     Upon information and belief, Defendants have willfully and intentionally

committed widespread violations of the FLSA and NYLL by engaging in pattern and practice

of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and

overtime compensation for all hours worked over forty (40) each workweek.

3.     Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the

Defendants: (1) illegally deducted meal credits, (2) illegally deducted "transportation costs,"

including for four (4) to five (5) months when Plaintiff served as the restaurant's

transportation van driver, (3) out of pocket expenses to delivery experts on the road, (4)

unpaid minimum wage and unpaid overtime wages, (5) liquidated damages, (6) prejudgment

and post-judgement interest; and or (7) attorney's fees and cost.

4.     Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York

Codes, Rules and Regulations § 146 (NYCRR) that he is entitled to recover from the

Defendants: (1) illegally deducted meal credits, (2) illegally deducted "transportation costs,"

including for four (4) to five (5) months when Plaintiff served as the restaurant's

transportation van driver, (3) out of pocket expenses to delivery experts on the road, (4)

unpaid minimum wage compensation and unpaid overtime compensation, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (7) liquidated damages equal to the sum of unpaid minimum wage, unpaid overtime, unlawfully withheld tips, and deducted tips and transportation costs in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (9) 9% simple prejudgment interest provided by NYLL, (10) post-judgment interest, and (11) attorney's fees and costs.

## JURISDICTION AND VENUE

5.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Southern District Court of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

7.     From on or about November 2015 to August 2016 and again from February 2017 to May 20, 2018, Plaintiff YINGCAI HONG was employed by Defendants to work as a deliveryman at 149 Mamaroneck Avenue, White Plains, NY, 10601.

## DEFENDANTS

### *Corporate Defendants*

8.      Defendant HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains is a domestic business corporation organized under the laws of the State of New York with a principal address at 149 Mamaroneck Ave, White Plains, NY 10601.

9.      HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

10.     HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains purchased and handled goods moved in interstate commerce.

11.     Defendant JP WHITE PLAINS INC. d/b/a Haiku Asian Bistro White Plains is a domestic business corporation organized under the laws of the State of New York with a principal address at 149 Mamaroneck Ave, White Plains, NY 10601.

12.     JP WHITE PLAINS INC. d/b/a Haiku Asian Bistro White Plains is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

13.     JP WHITE PLAINS INC. d/b/a Haiku Asian Bistro White Plains purchased and handled goods moved in interstate commerce.

14.     Defendant JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville is a domestic business corporation organized under the laws of the State of New York with a principal address at 56 Pondfield Road, Bronxville, NY 10708.

15.     JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars

($500,000) per year.

16.     JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville purchased and handled goods moved in interstate commerce.

17.     Defendant JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale is a domestic business corporation organized under the laws of the State of New York with a principal address at 717 White Plains Rd, Eastchester, NY 10583.

18.     JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

19.     JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale purchased and handled goods moved in interstate commerce.

### *Owner/Operator Defendants*

20.     The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendant and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

21.     SOONWAH LEE a/k/a Michael Lee known as "Boss" to Plaintiff, an owner of the Haiku Asian Bistro enterprise, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville; and

JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale.

22.    SOONWAH LEE a/k/a Michael Lee acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville; and JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale.

23.    PIETRO DIANA a/k/a Peter Diana and an owner of the Haiku Asian Bistro enterprise and New York Alcoholic Beverage Control principal for JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville; and JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale.

24.    PIETRO DIANA a/k/a Peter Diana acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville; and JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale.

25.    HSING YA CHANG a/k/a John Chang and an owner of the Haiku Asian Bistro enterprise and New York Alcoholic Beverage Control principal for JP WHITE

PLAINS, INC. d/b/a Haiku Asian Bistro White Plains, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville; and JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale.

26.    HSING YA CHANG a/k/a John Chang acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville; and JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale.

27.    JIE ZHANG a/k/a Jack Zhang, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville; and JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale.

28.    JIE ZHANG a/k/a Jack Zhang acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro

Bronxville; and JP SCARSDALE INC. d/b/a Haiku Asian Bistro Scarsdale.

## STATEMENT OF FACTS

### Defendants Constitute an Enterprise

29.    Upon information and belief, Corporate Defendants HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville are joint employers of Plaintiff and constitute an enterprise as the term is defined by 29 USC §203(r) insofar as they share staff, including Plaintiff, pay Plaintiff for the work performed at the enterprise no matter what location they worked; advertise the Corporate Defendants as an enterprise, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, including sharing a common website and logos, and are co-owned by the same partners (SOONWAH LEE a/k/a Michael Lee; PIETRO DIANA a/k/a Peter Diana; and HSINGYA CHANG a/k/a John Chiang). See Exhibit 07 (Haiku White Plain's Website listing all Haiku Asian stores), 08 (Haiku Asian Bistro Website listing all Haiku Asian stores), 09 (Haiku Scarsdale listing Haiku Partners), 10 (Pan-Asian Classics, Deftly Rendered, mentioning Michael Lee, Peter Diana, and Chiang Hsing-ya, New York Times), 11 (Sushi Heaven Special rolls rule at Haiku, an eclectic Asian bistro mentioning Partners Micahel Lee, Peter Diana, John Chiang), 12 (Pan-Asian Group Adds Another Winner, New York Times), 13 (Haiku Asian Bistro Opens in White Plains), 14 (Two More Haiku Bistros Opening One in Eastchester, One in Chappaqua).

30.    At all times relevant herein, HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville was, and continues to be, an

"enterprise engaged in commerce" within the meaning of FLSA.

31.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by HAIKU @ WP INC. d/b/a Haiku Asian Bistro White Plains; JP WHITE PLAINS, INC. d/b/a Haiku Asian Bistro White Plains; JP BRONXVILLE INC. d/b/a Haiku Asian Bistro Bronxville.

## **Wage and Hour Claims**

32.     There are at least one hundred (100) employees at the Haiku Asian Bistro restaurants.

33.     Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

### *Plaintiff YINGCAI HONG*

34.     From on or about November 2015 to August 2016 and again from February 2017 to May 20, 2018, Plaintiff YINGCAI HONG was employed by Defendants to work as a deliveryman at 149 Mamaroneck Avenue, White Plains, NY, 10601.

35.     From on or about November, 2015 to February, 2017 and again from February 2017 to December 2017 Plaintiff YINGCAI HONG's regular work schedule ran from:

   a.  11:30 to 15:30 and 17:00-22:00 for "early shifts" or from 11:00 to 15:30 and again from 17:00 to 22:30 for ten (10) hours a day on Mondays, Tuesdays, Wednesdays, and Thursdays for four (4) days and forty (40) hours;

   b.  11:30 to 15:30 and again form 17:00 to 22:30 for nine and a half (9.5) hours a day on Fridays for one (1) day and

   c.  16:30 to 22:30 for one (1) day.

36.     During this period, Plaintiff YINGCAI HONG was required to work through

the "break" from 15:30 to 17:00 on two days per week.

37.    As a result, Plaintiff YINGCAI HONG worked an average of fifty eight and a half (58.5) hours a week.

38.    From on or about January 2018 to May, 20, 2018, Plaintiff YINGCAI HONG's regular work schedule ran from:

   a.    11:30 to 15:30 and 17:00-22:00 for "early shifts" or from 11:00 to 15:30 and again fro 17:00 to 22:30 for ten (10) hours a day on Mondays, Tuesdays, Wednesdays, and Thursdays for four (4) days and forty (40) hours; and

   b.    11:30 to 15:30 and again form 17:00 to 22:30 for nine and a half (9.5) hours a day on Fridays for one (1) day.

39.    During this period, Plaintiff YINGCAI HONG was required to work through the "break" from 15:30 to 17:00 on two days per week.

40.    As a result, Plaintiff YINGCAI HONG worked an average of fifty a half (50.5) hours a week.

41.    At all relevant times, Plaintiff YINGCAI HONG did not have a fixed time for lunch or for dinner.

42.    Instead, he was always on call, meaning that if customer's order came, his break stopped and he had to deliver.

43.    From on or about November 2015 to August 2016 and again from February 2017 to February 11, 2018, Plaintiff YINGCAI HONG was paid seven dollars and fifty cents ($7.50) per hour.

44.    From on or about February 12, 2018 to May 20, 2018, Plaintiff YINGCAI HONG was paid a flat compensation at a rate of nine dollars and fifteen cents ($9.15) per

hour.

45.     At all relevant times, Plaintiff YINGCAI HONG was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

46.     Further, at all relevant times, Plaintiff YINGCAI HONG had to prepare the cardboard and do the sauces for the delivery.

47.     Additionally, Defendants deducted ten dollars ($10) a week in cash tips, around twenty dollars ($20) to twenty five dollars ($25) a week in meal credit, and between twenty dollars ($20) to twenty four dollars ($24) a week for transportation.

48.     This includes his five (5) month service as the restaurant's transportation van driver, for which he was compensated five dollars ($5) only for forty minutes to sixty minutes of non-tipped work.

49.     Plaintiff YINGCAI HONG's meal did not include any "tea, coffee, milk, or juice" as required by NYCRR §146.37.

50.     Throughout his employment, Plaintiff YINGCAI HONG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

51.     Plaintiff YINGCAI HONG also never received notice nor agreed to the illegal tip, transportation and meal deductions.

52.     As a result of the improper deductions, Plaintiff YINGCAI HONG was paid less than the federal minimum wage and not paid at least 1.5 times the federal minimum wage for each hour worked in excess of forty (40) hours in a workweek.

53.    As the federal minimum wage is below the state minimum wage at all relevant times, Plaintiff YINGCAI HONG was also not paid at least the state minimum wage and not paid at least 1.5 times the state minimum wage for each hour worked in excess of forty (40) hours in a workweek.

54.    As part of Plaintiff's employment with Defendants, Plaintiff YINGCAI HONG was required to bear the cost of the purchase of a motor vehicle and the costs of the gasoline.

55.    In delivering food to Defendants' customers, Plaintiff YINGCAI HONG drives an average of one hundred (100) miles each workday.

56.    On average, Plaintiff YINGCAI HONG drives two (2) miles (one way) per order, and delivers twenty five (25) orders a day.

57.    Each day, he would deliver two (2) to three (3) orders that go beyond the 4.5 mile delivery radius.

58.    For those orders, he received an additional three dollars ($3) in tips.

59.    Otherwise, Plaintiff YINGCAI HONG was not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

## COLLECTIVE ACTION ALLEGATIONS

60.    Plaintiff  brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings his NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

62.     All said persons, including Plaintiff, are referred to herein as the "Class."

63.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

64.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

65.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

b.      Whether Plaintiff and Class members are promised and not paid at their promised hourly wage;

c.      Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

d.      Whether Plaintiff and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

e.      Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

f.      Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

g.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter;

h.      Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

i.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

### *Typicality*

66.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class

members similarly, and Defendants benefitted from the same type of unfair and/or wrongful

acts as to each Class member. Plaintiff and other Class members sustained similar losses,

injuries and damages arising from the same unlawful policies, practices and procedures.

### Adequacy

67.     Plaintiff is able to fairly and adequately protect the interests of the Class and

have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are

experienced and competent in representing Plaintiffs in both class action and wage-and-hour

employment litigation cases.

### Superiority

68.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of wage-and-hour litigation where

individual Class members lack the financial resources to vigorously prosecute a lawsuit

against corporate defendants. Class action treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously,

efficiently and without the unnecessary duplication of efforts and expenses that numerous

individual actions engender. Because the losses, injuries and damages suffered by each of the

individual Class members are small in the sense pertinent to a class action analysis, the

expenses and burden of individual litigation would make it extremely difficult or impossible

for the individual Class members to redress the wrongs done to them. Further, important

public interests will be served by addressing the matter as a class action. The adjudication of

individual litigation claims would result in a great expenditure of Court and public resources;

however, treating the claims as a class action would result in a significant saving of these

costs. The prosecution of separate actions by individual members of the Class would create a

risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

69.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violation of 29 U.S.C. § 203(m), 29 CFR §531.3—Meal/ Transportation  Credit Violation**
**Brought on behalf of Plaintiff and the FLSA Collective]**

70.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

71.     29 U.S.C. § 203(m) defines "wages paid" to an employee to include the reasonable cost of board, lodging or other facilities.

72.     29 CFR § 531.3(a) has determined that "reasonable cost" as used in section 3(m) of the FLSA, means not more than the actual cost to the employer.

73.     Thus, 29 CFR §531.3 *et seq.* allows for employers to legally deduct the fair

value or reasonable cost of meal furnished to employees, so long as it does not include a profit to the employer or to any affiliated person.

74.    Defendants did not keep records of actual costs of the meals or transportation provided.

75.    Defendants' automatic meal deductions on employee paychecks, regardless of whether Plaintiff and the FLSA Collective takes the meal provided, underscores that Defendants' meal policy is made primarily for the Defendants' benefit.

76.    Defendants' automatic transportation deductions on Plaintiffs' paychecks, even when he was serving as the company's driver also underscores that Defendants' transportation is made primarily for Defendants' credit.

77.    Defendants' use of meal/ transportation credit toward Plaintiffs and the Collective Members was ingenuous and not in good faith.

### COUNT II.
**[Violation of 29 U.S.C. §203(m) and (t)—Illegal Retention of Tips**
**Brought on behalf of Plaintiff and the Collective]**

78.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

79.    The NYCRR provides for employers to legally deduct meal credit per meal for all workers on and after January 1, 2011, provided that it is furnished by the employer to the employee. NYCRR §146-1.9.

80.    From 2011 to 2016, the meal credit is $2.50 per meal.

81.    In 2017, the meal credit is $2.85 per meal for employers with more than ten (10) employees.

82.    In 2018, the meal credit is $3.25 per meal for employers with more than ten

(10) employees.

83.     The NYCRR provides that a meal shall provide adequate portions of at least one type of food from all four of the following groups: (1) fruits or vegetables; (2) grains or potatoes; (3) eggs, meat, fish, poultry, dairy, or legumes; and (4) tea, coffee, milk, or juice. *See* NYCRR §146.37.

84.     The Defendants did not provide any type of food from the fourth group, and accordingly the "meals" that they furnished are not a meal as defined in the NYCRR.

85.     Defendants intentionally failed to provide to employees the meals that they claimed credit for towards the employees' wage, in clear violation of NYCRR.

86.     Furthermore, Plaintiffs and other similarly situated employees did not necessarily take the meal, and Defendants did not record actual cost accrued for providing the meal.

87.     Defendants' use of meal credit toward Plaintiffs and Rule 23 Class was illegal, willful, and not in good faith.

### COUNT III.
### [Violation of NYCRR—Meal Credit Violation
### Brought on behalf of Plaintiff and the Rule 23 Class]

88.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

89.     A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

90.     The FLSA prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

## COUNT IV.
### [Illegal Tip Retention, NYLL §146-2.18 and NYLL §146-2.20
### Brought on behalf of Plaintiff and the Rule 23 Class]

91.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92.     Section 196-d of the New York State Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge purported to be a gratuity.

## COUNT V.
### [Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage/ Unpaid Wages
### Brought on behalf of the Plaintiff  and the FLSA Collective]

93.     Plaintiff  re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

94.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff  in full, and the similarly situated collective action members, for some or all of the hours they worked.

95.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

96.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff  and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Pay Minimum Wage/ Unpaid Wages Brought on behalf of Plaintiff and Rule 23 Class]

97.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

98.    At all relevant times, Plaintiff is employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

99.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff, and the collective action members, in full for some or all of the hours they worked.

100.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

101.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT VII.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]

102.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

103.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

104.     The FLSA provides that any employer who violates the provisions of 29

U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime

compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

105.     Defendants' failure to pay Plaintiff and the FLSA Collective their overtime

pay violated the FLSA.

106.     At all relevant times, Defendants had, and continue to have, a policy of

practice of refusing to pay overtime compensation at the statutory rate of time and a half to

Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours

per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*,

including 29 U.S.C. §§ 207(a)(1) and 215(a).

107.     The FLSA and supporting regulations required employers to notify employees

of employment law requires employers to notify employment law requirements. 29 C.F.R. §

516.4.

108.     Defendants willfully failed to notify Plaintiff and FLSA Collective of the

requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and

FLSA Collectives' labor.

109.     Defendants knowingly and willfully disregarded the provisions of the FLSA as

evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory

overtime rate of time and one half for all hours worked in excess of forty (40) per week when

they knew or should have known such was due and that failing to do so would financially

injure Plaintiff and Collective Action members.

### COUNT VIII.
**[Violation of New York Labor Law—Failure to Pay Overtime
Brought on behalf of Plaintiff and Rule 23 Class]**

110.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

111.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

112.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

113.    Defendant' failure to pay Plaintiff his overtime pay violated the NYLL.

114.    Defendants' failure to pay Plaintiff was not in good faith.

## COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and the Rule 23 Class]

115.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL § 162.

117.    Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiff worked.

118.    Though the Department of Labor commissioner may permit a shorter time to

be fixed for meal periods than hereinbefore provided, such permit must be in writing and be

kept conspicuously posted in the main entrance of the establishment. No such permit is

posted.

119.    Defendants' failure to provide the meal periods required by NYLL § 162 was

not in good faith.

## COUNT X.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and Rule 23 Class]

120.    Plaintiff  re-alleges and incorporates  by reference all preceding paragraphs as

though fully set forth herein.

121.    Defendants did not maintain, establish and preserve Plaintiff's  weekly payroll

records for a period of not less than six years, as required by NYCRR § 146-2.1.

122.    As a result of Defendants' unlawful conduct, Plaintiff  has  sustained damages

including loss of earning, in an amount to be established at trial, liquidated damages,

prejudgment interest, costs and attorneys' fee, pursuant to the state law.

123.    Upon information and belief, Defendants failed to maintain adequate and

accurate written records of actual hours worked and true wages earned by Plaintiff  in order to

facilitate their exploitation of Plaintiff's  labor.

124.    Defendants' failure to maintain adequate and accurate written records of actual

hours worked and true wages earned by Plaintiff were not in good faith.

## COUNT XI.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
### Brought on behalf of Plaintiff and Rule 23 Class]

125.    Plaintiff  re-alleges and incorporates  by reference all preceding paragraphs as

though fully set forth herein.

126.    The NYLL  and supporting  regulations  require  employers  to  provide  written

notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

127.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

128.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

129.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT XII.
### [Violation of New York Labor Law—Failure to Provide Wage Statements
### Brought on behalf of Plaintiff and Rule 23 Class]

130.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

131.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

132.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on

or after each Plaintiffs' payday.

133.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

### COUNT XIII.
**[[Defendants' Failure To Pay To Delivery Experts Working "On The Road"
Brought on Behalf of Plaintiff and the Class]**

134.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

135.    Throughout the relevant period, Defendants required their delivery experts to maintain and provide a safe, functioning, insured and legally-operable automobile to make deliveries.

136.    Throughout the relevant period, Defendants required their delivery experts to bear all of the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate for businesses and employees to use in computing the *minimum* deductible costs of operating an automobile for business purposes.

137.    For 2015, the IRS Standard Mileage Rate is $0.575 per mile.

138.    For 2016, the IRS Standard Mileage Rate is $0.540 per mile.

139.    For 2017, the IRS Standard Mileage Rate is $0.535 per mile.

140.    For 2018, the IRS Standard Mileage Rate is $0.545 per mile.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)      An award of unlawfully deducted meal credit and transportation costs, as well as unlawfully retained tips;

h)      An award of out-of-pocket breach-of-contract delivery costs for motorcycle expenses incurred and expended by Plaintiff on Defendants' bequest and behalf;

i)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

k)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

l)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to minimum wages and overtime wages pursuant to New York Labor Law;

m)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

n)      The cost and disbursements of this action;

o)      An award of prejudgment and post-judgment fees;

p)      Providing that if any amounts remain unpaid upon the expiration of ninety

days following the issuance of judgment, or ninety days after expiration of the time to appeal

and no appeal is then pending, whichever is later, the total amount of judgment shall

automatically increase by fifteen percent, as required by NYLL §198(4); and

q)      Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

Dated: Flushing, New York

May 31, 2019

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*

/s/ John Troy
John Troy (JT0481)