UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>
YINGCAI HONG, <em>in his own behalf and on behalf of others similarly situated</em>,<br><br>
                  Plaintiff,<br><br>
   -against-<br><br>
HAIKU @ WP INC. <em>d/b/a Haiku Asian Bistro White Plains</em>; JP WHITE PLAINS, INC. <em>d/b/a Haiku Asian Bistro White Plains</em>; and SOONWAH LEE <em>a/k/a Michael Lee</em>,<br><br>
                 Defendants.
</td></tr>
</table>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___01/28/2022___

No. 19 Civ. 5018 (NSR)
OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Yingcai Hong, a former deliveryman, brought this putative collective and class action against Haiku @ WP Inc. and JP White Plains, Inc., and their owner, Soonwah Lee (collectively, "Defendants"), alleging wage violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 190 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.*, §§ 650 *et seq.* Presently pending before the Court is Plaintiff's Motion for Conditional Class Certification (ECF No. 46), seeking an order conditionally certifying a collective class of similarly-situated employees, directing Defendants to produce identifying, contact and other information from these potential plaintiffs, and a court-authorized Notice of Lawsuit and Consent to Join Lawsuit Form to send to these potential plaintiffs. For the following reasons, the Court GRANTS IN PART, DENIES IN PART Plaintiff's motion.

## BACKGROUND

The Court draws the facts below from the Amended Complaint (ECF No. 28) and Plaintiff's affidavit in support of the instant motion (Hong Aff., ECF No. 47-4).

## I.  Plaintiff's Employment with Defendants

Defendants operate a restaurant known as Haiku Asian Bistro ("Haiku") located in White Plains, New York. (Am. Compl. ¶¶ 8, 11, 21, 32–33.) Haiku employs between 20 and 30 people. (Hong Aff. ¶ 4.) During the relevant time period, Plaintiff recalls that Haiku employed approximately 3-5 delivery persons, 8-9 sushi bar workers, 5 waiters, 5 cooks, 3 fry wok workers, and 2 cashiers/recipients. (*Id.* ¶ 32.)

Plaintiff alleges that from about November 2015 to August 2016, and again from February 2017 to May 20, 2018, Defendants employed him as a deliveryman at Haiku. (Am. Compl. ¶¶ 7, 34.) Until December 2017, Plaintiff worked an average of 58.5 hours per week (*id.* ¶¶ 38–40) and Defendants paid him $7.50 per hour (*id.* ¶ 46.) From January 2018 to May 2018, he worked an average of 50.5 hours per week (*id.* ¶¶ 41–43) and Defendants paid him $9.15 per hour (*id.* ¶ 47).

Plaintiff also alleges that throughout his employment, he had to work through his hour-and-a-half "break" two days per week and did not have a fixed time for lunch or dinner. (*Id.* ¶¶ 39, 42, 44). During his employment, $10 per week was deducted in cash tips, $20-$25 per week was deducted as a meal credit, and $24 per week was deducted for transportation. (*Id.* ¶ 50.) Plaintiff's meals did not include any tea, coffee, milk, or juice. (*Id.* ¶ 52.) Defendants never informed him of his hourly pay rate or any tip deductions toward the minimum wage. (*Id.* ¶ 48.) Finally, Plaintiff did not receive a weekly pay statement, or notice of the deductions to his tips, transportation, or meals. (*Id.* ¶¶ 53–54.)

Each workday, Plaintiff drove an average of two miles each way to deliver about 25 customer orders, totaling approximately 100 miles per workday. (*Id.* ¶¶ 58–59.) On average, two or three orders per day were outside the 4.5-mile delivery radius, and for making such deliveries, he earned an extra $3 in tips. (*Id.* ¶¶ 60–61.) Plaintiff was "required to bear the cost of the purchase

of a motor vehicle, and the costs of gasoline," and alleges that he was not reimbursed for the cost of gasoline or vehicle maintenance. (*Id.* ¶¶ 57, 62.) Further, for a period of five months, Plaintiff served as the transportation van driver and Defendants compensated him $5 for forty to sixty minutes of non-tipped work. (*Id.* ¶ 51.)

As a result of the foregoing, Plaintiff alleges that Defendants paid him less than the federal minimum wage for the first 40 hours per week and less than the required 1.5 times the federal minimum wage for each hour worked beyond 40 hours per week. (*Id.* ¶ 55.) Since the New York minimum wage was higher than the federal minimum wage for all relevant periods, his pay was also below the New York minimum wage at all relevant times. (*Id.* ¶ 56.)

## II.    Plaintiff's Allegations About Other Potential Plaintiffs

Plaintiff asserts that he is aware of other delivery drivers who worked under similar circumstances as he did, including: Lao Gao (Hong Aff., ¶¶ 34–44), Lao Meng (*id.* ¶¶ 45–55), Lin Ding (*id.* ¶¶ 56–66), Qiang Lang (*id.* ¶¶ 67–77), Jiao (*id.* ¶¶ 78–88), and Qiu (*id.* ¶¶ 89–98). Plaintiff claims that each of these workers worked more than 40 hours per week, received $7.50 per hour plus tips initially, and $9.15 per hour plus tips thereafter. (*Id.* ¶¶ 34–44, 45–55, 56–66, 67–77, 78–88, 89–98.) He claims that each of these workers had similar "improper deductions" made against their pay for meals, tips, and transportation costs. (*Id.*) Plaintiff claims to be aware of these facts after observing the manager handing them their pay each week on a check along with a salary chart at the same time. (*Id.*) He further claims that each of these workers also received a meal like his, which did not include tea, coffee, milk, or juice. (*Id.*)

Plaintiff also asserts that he is aware of other employees—not delivery drivers—who he claims worked under similar circumstances, including: Ah Biao, a waiter (*id.* ¶¶ 99–103), Lisa, a waitress (*id.* ¶¶ 104–08), another unidentified waitress (*id.* ¶¶ 109–13), Danny, a driver (*id.* ¶¶

114–18), Ah Liang, a sushi chef (*id.* ¶¶ 119–23), Ah Ling, a cashier/recipient (*id.* ¶¶ 124–28), another unidentified Malaysian cashier/recipient (*id.* ¶¶ 129–32), two unidentified Spanish-speaking kitchen workers who are father and son (*id.* ¶¶ 133–37), and another pair of unidentified Cantonese kitchen workers who are also father and son (*id.* ¶¶ 138–42). He claims that each of these workers also worked more than 40 hours per week. (*Id.* ¶¶ 99–103, 104–08, 109–13, 114–18, 119–23, 124–28, 129–32, 133–37, 138–42.) He finally claims to be aware of these facts because he drove these employees "to and back from the restaurant, and [he] saw [their] starting and ending time every workday." (*Id.*)

## III.   Procedural History

Plaintiff filed this action on May 31, 2019. (ECF No. 1.) The Court granted him leave to file an Amended Complaint and Defendants leave to move to dismiss the Amended Complaint. (Minute Entry dated Feb. 6, 2020.) Plaintiff filed an Amended Complaint on February 27, 2020 asserting thirteen causes of action, including: (I) meal transportation credit violation under 29 U.S.C. § 203(m) and 29 C.F.R. § 531.3; (II) illegal tip retention under 29 U.S.C. § 203(m) and (t); (III) meal credit violation under NYCRR; (IV) illegal tip retention under NYLL § 146-2.18 and 2.20; (V) failure to pay minimum wage and unpaid wages under 29 U.S.C. § 206; (VI) failure to pay minimum wage and unpaid wages under NYLL; (VII) failure to pay overtime in violation of 29 U.S.C. § 207(a); (VIII) failure to pay overtime in violation of NYLL; (IX) failure to provide meal periods in violation of NYLL; (X) failure to keep records in violation of NYCRR § 14602.1; (XI) failure to provide time of hire wage notice in violation of NYLL § 195-1(a); (XII) failure to provide wage statements in violation of NYLL § 195-1(d); and (XIII) failure to pay delivery experts working on the road standard mileage reimbursement rate published by the Internal Revenue Service. (ECF No. 28.)

On June 3, 2020, Defendants moved to dismiss Plaintiff's Amended Complaint for lack of standing, and, alternatively, for failure to state a plausible claim. (ECF No. 33.) On March 31, 2021, the Court granted in part, denied in part Defendants' motion. (ECF No. 38.). Specifically, while the Court dismissed the claims asserted against certain corporate and individual defendants because Plaintiff failed to sufficiently allege that they had any nexus to or control over his employment, it also denied the motion in all other respects. (*Id.*) Defendants subsequently filed their answer on May 5, 2021. (ECF No. 41.)

On May 19, 2021, Plaintiff asked leave from the Court to file the instant motion, which the Court granted and then set a briefing schedule. (ECF Nos. 42, 43.) The parties filed their respective briefing on August 20, 2020: Plaintiff filed the instant motion (ECF No. 46), his attorney's declaration with accompanying exhibits (ECF No. 47), a memorandum in support (Mot., ECF No. 48); Defendants filed their response in opposition (Resp. in Opp'n, ECF No. 49) and their attorney's declaration with accompanying exhibits (ECF No. 50); and finally, Plaintiff filed his reply (Reply, ECF No. 51).

## DISCUSSION

By his motion, Plaintiff argues that conditional certification is appropriate because he has made the required showing that other individuals employed by Defendants are similarly situated. (Mot. at 16–22.) He further requests the Court to issue an order expediting notice and disclosure of contact information, as well authorizing his proposed notice of pendency and consent joint form to be disseminated by mail, email, text message, or social media groups, among other means, to all members of the collective in English, Chinese, and Spanish. (*Id.* at 22–29.) Plaintiff finally asks the Court to equitably toll the statute of limitations to protect the claims of the potential members of the FLSA collective against Defendants. (*Id.* at 29–30.)

In opposition, Defendants contend that Plaintiff has failed to show that the employees he seeks to represent were victims of a "common plan or policy" that violated the FLSA within the limitations period, or even that Defendants committed an FLSA violation (Resp. in Opp'n at 15–21.) But should the Court grant the conditional certification, Defendants request the Court to limit the FLSA collective because Plaintiff failed to show that the non-driver employees he seeks to represent are similarly situated based on his claims. (*Id.* at 21–24.) Moreover, if the Court authorizes and sends the notice to these members, Defendants ask the Court to (1) deny equitable tolling, or, alternatively, to keep the look-back period to two years because Plaintiff has failed to present any well-pleaded allegations of that the Defendants committed the FLSA violations willfully; and (2) modify and revise the notices Plaintiff proposes. (*Id.* at 17–32.)

Accordingly, the Court will first address whether Plaintiff made the required showing that other employees were similarly situated and will only consider the rest of the parties' arguments if conditional certification is warranted.

## I.    Conditional Certification

Plaintiff first avers that, through his own affidavit, he can make a substantial showing that he and other employees were subject to a common policy or plan that violated the FLSA. (Mot. at 17.) Specifically, he avers that the six delivery drivers from his affidavit were all working five and a half (5.5) days on average per week and between 51.5 and 55.5 hours each week, receiving a flat hourly rate at either seven dollars and fifty cents ($7.50) and nine dollars and fifteen cents ($9.15) per hour, and with unlawful deductions of tips, meal, and transportation credits. (*Id.* at 18.) Plaintiff further avers that other employees, who were not delivery drivers, also worked more than 40 hours per week in substantially the same work conditions. (*Id.* at 19–20.)

But Defendants argue that Plaintiff's affidavit relates solely to practices that allegedly existed outside the limitations period relevant to the claims of the potential opt-in plaintiffs. (Resp. in Opp'n at 16–17.) Put another way, Defendants seem to argue that even if any Plaintiff sufficiently shows that the other employees are similarly situated, the expired limitations period bars them from opting into the instant putative collective and class action. Defendants also argue that Plaintiff fails to provide sufficient evidence for the Court to determine whether there was even a FLSA violation by merely providing unsupported assertions and conclusory accusations that the alleged credits or "deductions" Defendants took were "illegal." (*Id.* at 21–22.) Moreover, Defendants argue that Plaintiff provides no evidence supporting the inference that the other non-driver employees are similarly situated to him. (*Id.* at 22–24.)

Before addressing any argument relating to the applicable limitations period and equitable tolling, the Court will first consider whether Plaintiff has made a substantial showing that he and the other employees were similarly situated. After reviewing Plaintiff's allegations and affidavit, the Court concludes that Plaintiff has sufficiently done so with respect to the other delivery drivers, but not the rest of the employees.

A.    Legal Standard

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become parties to such an action, employees other than the named plaintiff(s) must "opt in" by filing written consents in the court in which the action is brought. *Id.* "Although they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the

7

action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has endorsed a two-step method to determine whether a case should proceed as a collective action under FLSA. *See Myers*, 624 F.3d at 554. In the first step—commonly known as "conditional certification"—the named plaintiffs must make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" *id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)), at which point the court may send (or direct plaintiffs' counsel to send) a notice to potential opt-in plaintiffs. *Id.* At the second stage, which typically occurs after discovery is completed, the court determines whether the plaintiffs who opted in are in fact "similarly situated" to the named plaintiffs. *Id.* If not, the court may "de-certif[y]" the collective and dismiss the opt-in plaintiffs' claims without prejudice. *Id.*

However, as the purpose of this first stage is "merely to determine whether 'similarly situated' plaintiffs do in fact exist," *Prizmic v. Armour, Inc.*, No. 05-CV-2503(DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006), plaintiffs' burden at the conditional certification stage is "minimal." *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013). "Plaintiffs can meet this burden by showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (quoting *Myers*, 624 F.3d at 555). Documents properly considered in this inquiry "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557–58 (S.D.N.Y. 2013) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013)). These documents

"must set forth 'a defendant's plan or scheme to not pay overtime compensation' and must identify 'by name similarly situated employees.'" *Fernandez v. On Time Ready Mix, Inc.*, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quoting *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)). But "[i]n making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).

Consistent with the "minimal" burden of proof assigned to plaintiffs at the conditional certification stage, the court "should not weigh the merits of the underlying claims," *Hamadou*, 915 F. Supp. 2d at 662 (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (internal quotation marks omitted). Accordingly, where there is a conflict between the parties as to the facts underlying plaintiffs' wage-and-hour claims, the court should treat plaintiffs' attestations as true. *See Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

However, "[w]hile plaintiff's burden at this stage is modest, it is not non-existent." *Khan v. Airport Mgmt. Servs. LLC*, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011). "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach*, 942 F.3d at 1567). "Conclusory allegations are not enough." *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (quoting Wright, Miller & Kane, 7B Federal Practice and Procedure § 1807 (3d ed. 2002)).

B.     Application

Here, Plaintiff provides sufficient factual detail to enable the Court to conclude, at least preliminarily, that he is similarly situated to the other delivery drivers with whom he worked. He first identifies other delivery drivers either by their names or nicknames and physical description, who he asserts were subject to similar wage-and-hour violations. (*See* Hong Aff. ¶¶ 34–44, 45–55, 56–66, 67–77, 78–88, 89–98;) *see also Qing Gu v. T.C. Chikurin, Inc.*, No. CV 2013-2322 SJ MDG, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) ("Courts in this Circuit have commonly authorized the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees such as their names, their duties and their hours worked or where plaintiff provides affidavits from such employees setting forth the pertinent facts.") (collecting cases). Plaintiff next avers that delivery drivers at Haiku were subject to similar policies and practices, including that they were allegedly (1) not paid the minimum wage based on unlawful deductions of tips, meal, and transportation credits; (2) often required to work overtime without adequate pay; and (3) given meals which did not include tea, coffee, and milk. (*Id.*) And he asserts that he learnt of such circumstances by working alongside the other drivers and by observing the manager handing over their pay in check with an accompanying salary chart, which reflected similar credit deductions. (*Id.*;) *see also Sanchez v. JMP Ventures, L.L.C.*, No. 13 CIV. 7264 KBF, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) ("[W]here or when these observations or conversations occurred . . . is critical . . . for the Court to determine the appropriate scope of the proposed class and notice process."). Thus, from these facts, the Court can fairly infer that other delivery drivers worked under similar working conditions and "allegedly suffer[ed] the same violations of the FLSA and NYLL." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 482 (S.D.N.Y. 2016).

Yet, Defendants contend that "[o]n the very face of his allegations, there was no FLSA violation at all after February 11, 2018," and that Plaintiff "offers no evidence that would allow the Court to determine that the deductions allegedly taken by Defendants were improper under the FLSA." (Resp. in Opp'n at 18.) Defendants also dispute that these deductions occurred and claim that even if they did, that Plaintiff "has failed to provide any evidence of the circumstances surrounding the alleged 'deductions' such that the [C]ourt can determine" that they were improper because an employer is allowed to take credits against its minimum wage obligation. *(Id.* (citing 29 U.S.C. § 203(m).)

But Defendants overlook that the purpose of this first stage is "merely to determine whether 'similarly situated' plaintiffs do in fact exist," *Prizmic*, 2006 WL 1662614, at *2, and that the Court "should not weigh the merits of the underlying claims," *Hamadou*, 915 F. Supp. 2d at 662 (citations omitted). In fact, Defendants already unsuccessfully attempted to make a similar argument about the insufficiency of Plaintiff's allegations in their previous motion to dismiss. (*See* ECF No. 38;) *see also Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 219 (D. Conn. 2009) ("The court notes that . . . [Defendant] appears to be couching arguments about the merits of the [ ] case[.] [However], [a]t the certification stage, a court need not judge the merits of the plaintiffs' claims because they are irrelevant to the collective action inquiry, as long as plaintiffs assert a plausible basis for their claim.); *Garcia v. Four Bros. Pizza*, No. 13 CV 1505, 2014 WL 2211958, at *6 (S.D.N.Y. May 23, 2014) (refusing to consider deposition testimony that would undermine plaintiff's FLSA claims at the conditional certification stage since "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here.") (internal quotations and citation omitted).

However, regarding the broader class of non-managerial employees that Plaintiff wishes to certify (encompassing waiters/waitresses, sushi chefs, cashiers/recipients, and kitchen workers), the Court agrees with Defendants that Plaintiff has not met his burden because he has only made conclusory assertions. While he does allege that these other non-managerial employees often worked overtime (*see* Hong Aff. ¶¶ 99–103, 104–08, 109–13, 114–18, 119–23, 124–28, 129–32, 133–37, 138–42), the Court cannot fairly infer from that fact alone that they labored under similar working conditions and thus suffered the same violations of the FLSA—namely, that they were inadequately paid. *See Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *4 (S.D.N.Y. May 23, 2016) (quoting *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 525 (S.D.N.Y. 2015)). "Though . . . the bar for conditional certification of a collective action under the FLSA is low, it is not this low." *Sanchez*, 2014 WL 465542, at *1.

As Plaintiff has failed to meet even his modest burden of showing that these as waiters/waitresses, sushi chefs, cashiers/recipients, and kitchen workers employed by Defendants are similarly situated to him, this Court will not conditionally certify a collective that includes these categories of workers. Accordingly, at this stage, this Court only finds it appropriate to grant conditional certification of a collective covering employees who held the position of "delivery drivers" at Haiku in White Plains, New York.

## II.   Limitations Period, Equitable Tolling, and Look-Back Notice Period

As mentioned above, Defendants contend that any alleged FLSA violation relating to other potential plaintiffs that occurred during Plaintiff's employment (which ended May 20, 2018) is barred because it would have occurred outside either the two-year or three-year limitations period applicable under the FLSA. (Resp. in Opp'n at 16–17.)

But Plaintiff argues that, because he made allegations of willful violations of the FLSA, the Court should permit the collective period to extend back three years from the filing of the complaint, as courts routinely allow, for potential plaintiffs to join the collective class. (Mot. at 29–30; Reply at 9–10.) He further argues that equitably tolling the statute of limitations for 90 days until the expiration of the opt-in period is necessary to protect the potential plaintiffs' claims due to the significant delay in ruling on this motion. (Mot. at 30; Reply at 9–11.)

Nonetheless, Defendants counter that first, Plaintiff fails to sufficiently allege facts giving rise to a plausible inference that they willfully violated the FLSA under the Second Circuit's recent opinion in *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315 (2d Cir. 2021), (Resp. in Opp'n at 25–26); and second, he fails to show any exceptional circumstances justifying equitable tolling of the limitations period, (*id.* at 27–29). After due consideration, although the Court agrees that the look-back period should be three years based on Plaintiff's willful allegations, it declines to equitably toll the limitations period at this time.

Under the FLSA, plaintiffs are generally afforded two years to file a claim from the time the cause of action accrued unless the violation is "willful," in which case plaintiffs are afforded three years. *See* 29 U.S.C. § 255(a); *see also Hamadou*, 915 F. Supp. 2d at 668. Where parties dispute the willfulness of the violations, courts typically apply the three-year, rather than two-year, statute of limitations. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007). But while the "statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13–cv–8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (citing

13

29 U.S.C. § 256(b); *Ouedraogo v. A–1 Int'l Courier Serv., Inc.,* No. 12 Civ. 5651 (AJN), 2013 WL 3466810, at *4 n. 2 (S.D.N.Y. July 8, 2013)).

However, because "equitable tolling issues often arise as to individual opt-in plaintiffs[,] . . . courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Id.* (citation and internal quotation marks omitted). As a court previously noted, Defendants "will not be prejudiced by a potentially over-inclusive notice" by using the date of the complaint's filing because it would "increase the likelihood that more party plaintiffs with timely claims consent to opt in, with the understanding that at the appropriate stage in the litigation, Defendants will have an opportunity to argue that each plaintiff's claim is untimely because equitable tolling does not apply." *Alvarado Balderramo v. Taxi Tours, Inc.*, No. 15 CV 2181, 2017 WL 2533508, at *6 (S.D.N.Y. June 9, 2017); *accord Lopes v. Heso, Inc.*, No. 16CV6796MKBRML, 2017 WL 4863084, at *6 (E.D.N.Y. Oct. 27, 2017).

Here, the Court notes that there is a particularly strong basis for potential equitable tolling here given the significant delay in ruling on this motion. *See Yap*, 146 F. Supp. 3d at 565. Indeed, some courts in this district "have found that the delay in ruling on a motion for conditional approval, coupled with the plaintiffs' diligence and avoiding prejudice to potential plaintiffs, is enough to grant equitable tolling." *Guzman v. Three Amigos SJL Inc.*, No. 14 Civ. 10120 (GWG), 117 F. Supp. 3d 516, 528, 2015 WL 4597427, at *10 (S.D.N.Y. July 30, 2015) (citing *Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2740 (AT), 2015 WL 260436, at *6 (S.D.N.Y. Jan. 20, 2015); *McGlone*, 867 F. Supp. 2d at 445).

But even when assuming the significant delay in deciding this motion merits equitable tolling, it is unclear whether these potential plaintiffs will be barred from this action due to a delay

in notice. "Where, as here, 'there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs[,]'" *Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19CV7332PAEBCM, 2021 WL 148751, at *13 (S.D.N.Y. Jan. 15, 2021), *aff'd sub nom. Ke v. JR Sushi 2 Inc.*, No. 19CIV7332PAEBCM, 2021 WL 465359 (S.D.N.Y. Feb. 9, 2021), and thus, "the determination as to the timeliness of each future plaintiff's action is better reserved for a future proceeding." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (citing *Thompson v. World All. Fin. Corp.*, No. 08 Civ. 4951 (AKT), 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010)). As such, the Court denies Plaintiff's request for equitable tolling at this time.

That said, because Plaintiff alleges that the violations here were willful (*see* Am. Compl. ¶¶ 2, 36, 90, 99, 103, 111–112), the Court will permit notice to be distributed to "all potential plaintiffs employed within three years of the date of the filing of the Complaint[] and defer consideration of the statute of limitations until after the opt-in period." *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *10 (S.D.N.Y. Sept. 16, 2013); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) ("Out of an abundance of caution, and seeking to avoid any merit-based determinations at this time, the Court will conditionally certify class members employed by [Defendant] over the past three years pursuant to possible decertification at a later time."); *Yap*, 146 F. Supp. 3d at 565 ("In FLSA cases, where the willfulness of the alleged violations is disputed, as it is here, the court applies the three-year statute of limitations for purposes of certifying a representative action" (citations and internal quotation marks omitted)). "At that time, any individual would-be plaintiffs whose claims have expired may seek equitable tolling as it may apply to them." *Mendoza*, 2013 WL 5211839, at *10.

To be sure, Defendants are correct that the Second Circuit recently held in *Whiteside* "that the mere allegation of willfulness is insufficient to allow an FLSA plaintiff to obtain the benefit of the three-year exception at the pleadings stage," and that a plaintiff must instead "allege facts that permit a plausible inference that the defendant willfully violated the FLSA for that exception to apply." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021). But the Court of Appeals did not address this standard in the context of a motion for conditional certification. Indeed, even after *Whiteside*, the courts within this Circuit that have addressed this issue have continued to follow prior precedent and held that "where willfulness is disputed, it is appropriate to look to the three-year period in determining the scope of a collective action." *Hernandez v. NHR Hum. Res.*, LLC, No. 20-CV-3109 (PGG) (DF), 2021 WL 2535534, at *15 (S.D.N.Y. June 18, 2021) (quoting *Curry v. P&G Auditors and Consultants, LLC*, No. 20-CV-6985 (LTS) (SLC), 2021 WL 2414968, at *14 (S.D.N.Y. June 14, 2021)); *accord Modise v. Careone Health Servs.*, LLC, No. 3:20-CV-00765 (KAD), 2021 WL 3421711, at *6 n.10 (D. Conn. Aug. 5, 2021). Thus, the Court joins its fellow sister courts in following prior precedent and rejects Defendants' relevant contentions.

Therefore, the Court will allow notice to be sent to all delivery drivers employed by Defendants at Haiku in White Plains, New York during the three years prior to May 31, 2019, the date of the filing of the complaint.

## III.    Production of Potential Op-In Plaintiff Information

Plaintiff next requests that the Court order Defendants to produce a Microsoft Excel spreadsheet containing contact information for the potential opt-in plaintiffs. He requests Defendants to disclose, among other things, the potential opt-in plaintiffs' "last known mailing addresses, [last] known telephone numbers, last known email addresses, last known WhatsApp,

WeChat and/or Facebook usernames, work location, dates of employment, and position," within 14 days of the order granting his request for conditional certification. (Mot. at 20–21.)

Courts in this Circuit "routinely grant . . . motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action" following conditional certification. *Anglada v. Linens 'N Things, Inc.*, 2007 WL 1552511, at *7 (S.D.N.Y. Apr. 26, 2007) (collecting cases), *report and recommendation adopted* (May 22, 2007). Likewise, courts "commonly grant" requests for production of mailing addresses and dates of employment for the potential opt-in plaintiffs. *Cortes*, 2015 WL 7076009, at *4.

While courts in this District vary in their willingness to order production of telephone numbers and email addresses, it is increasingly clear that this information permits a more efficient means of providing notice than first class mail. *See, e.g.*, *Diatta v. Iguana New York Ltd.*, 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions."); *Racey*, 2016 WL 3020933, at *10 (ordering defendants to provide "a list of the names, addresses, telephone numbers, email addresses, and dates of employment for potential class members"); *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12 CIV. 7795 RWS, 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013*) (*ordering defendants to produce "a computer-readable list of the names, addresses, compensation rates, telephone numbers, and dates of employment" for all potential opt-in plaintiffs).

For that reason, courts in this District have in some cases ordered the production of the potential opt-in plaintiffs' social media information, including WhatsApp, WeChat, and Facebook usernames. *See Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020) (granting plaintiff's request for such information, despite "possible privacy concerns," because the court must consider "the possibility that some members may not have phone numbers or stable

addresses"); *Ting Qui Qui v. Shanghai Cuisine Inc.*, 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (granting request for social media information); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, 2019 WL 3759126, at *12-13 (S.D.N.Y. July 25, 2019) (same).

On balance, this Court concludes that Defendants providing social media usernames can help ensure that notice of the collective action reaches all potential opt-in plaintiffs. *Qiang Lu*, 447 F. Supp. 3d at 97. Therefore, the Court will require Defendants to produce to Plaintiff's counsel, within 14 days of this Order, an Excel spreadsheet containing the names, dates of employment, positions, last known mailing addresses, last known telephone numbers, last known email addresses, and last known WhatsApp, WeChat and/or Facebook usernames, of all current and former delivery drivers employed by Defendants at Haiku in White Plains, New York on or after May 31, 2016.

## IV.    Notice and Consent Form

The next set of issues the parties raise involves the form, method, and timing of the information to be sent to the potential opt-in plaintiffs. Plaintiff requests that the Court approve his proposed Notice that gives the potential plaintiffs 90 days to "opt in" to this action. ("Proposed Notice," ECF No. 47-2.) Plaintiff further requests that the Court: (1) authorize Plaintiff's counsel to disseminate the Notice via mail, email, text message or social media chat, and on counsel's website and social media groups, (*id.* at 23–24, 26–27); (2) require Defendants to post the Notice in a conspicuous location in their restaurants and to include it in the employees' pay envelopes or other methods of delivery of their paycheck information, (*id.* at 27); (3) authorize Plaintiff's counsel to send a reminder, via mail and email, to all individuals who have failed to respond approximately halfway through the notice period, (*id.* at 27–28); (4) exclude the contact

information for Defendants' counsel from the Notice, (*id.* at 28); and (5) require that "all notices or posts to employees' attention be in Chinese, Spanish, and English," (*id.* at 30).

Defendants object (or seek revisions) to the content of the proposed Notice and Plaintiff's proposals for distributing it, arguing that: (1) the contact information for Defendants' counsel should be included in the Notice; (2) Plaintiff's counsel should disclose its fee arrangement with any prospective plaintiffs, including the percentage of any recovery that would be paid as attorney fees from any recovery by opt-in Plaintiffs, and that "language should be added to reflect that an individual who joins the case may be asked to pay for costs and fees"; (3) the consent form should be sent to either to Plaintiff's counsel or the Clerk of Court, rather than just Plaintiff's counsel; (4) the opt-in period should extend for only 60 days rather than the requested 90 days; (5) the immigration status reference from the Notice should be removed; (6) there is no need for a reminder notice; (7) the Notice should not be posted at the restaurant because it is unnecessary and overly intrusive; and (8) the Notice should not be posted on social media groups, nor should it be published on Plaintiff's counsel's website. (Resp. in Opp'n at 13–19.)

The Court addresses each point in turn.

A.    <u>Content of Notice</u>

"Neither the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor what provisions the notice should contain." *Lee v. ABC Carpet & Home*, 2008 WL 2073932, at *1 (S.D.N.Y. May 9, 2008). "Under the FLSA, the content of the notice is left to the court's discretion." *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009); *accord Lopez v. JVA Indus., Inc.*, 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (noting that the FLSA "vests the district court with broad discretion" with respect to the notice of pending litigation to be provided to potential opt-in plaintiffs).

"The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli*, 516 F. Supp. 2d at 323). With that in mind, the notice generally should contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012). Courts in this District have also held that the notice should include a warning that opt-in plaintiffs may be required to provide information, appear for deposition, or testify in court. *See Salomon*, 847 F. Supp. 2d at 567 (modifying proposed notice to explain such a possibility).

Defendants are generally correct that the Notice should disclose the fee arrangement between Plaintiff's counsel and any opt-in plaintiffs. *See Mendoza v. Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *8 (S.D.N.Y. Sept. 16, 2013) ("[i]ncluding such information allows potential plaintiffs to understand the details of the arrangement to which they would consent if they chose to opt into the collective action"); *Fasanelli*, 516 F. Supp. 2d at 324 ("Because the fee structure may impact [an] 'opt-in' Plaintiff's recovery, if any, notice of those agreements should be provided up front."). However, the Court will not require disclosure of the precise percentage or amount to be paid to Plaintiff's counsel as attorney fees, because that figure cannot now be known. Under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), and *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), this Court must approve any award of fees and costs as fair

and reasonable. It would be therefore "premature to include that specific information on a Notice of Pendency." *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, 2018 WL 1737726, at *6 (S.D.N.Y. Mar. 26, 2018).

Here, Plaintiff's proposed Notice states in general terms that, for any opt-in plaintiff who chooses to be represented by Plaintiff's counsel, "their costs and fees will be paid out of any settlement or money judgment Plaintiffs receive against Defendants," (Proposed Notice at 4), and that counsel "will not receive any fee" if there is no settlement or money judgment. (*Id.*) The consent form appended to the Notice explains further that if there is a settlement or judgment, Plaintiff's counsel "will petition the Court for reasonable attorneys' fees and expenses" and will "receive a proportion of any such gross settlement or judgment amount." (*Id.* at 5.) "While not inaccurate, this language fails adequately to convey that, upon settlement, the Court will evaluate any request for fees and costs by Plaintiff's counsel and will approve such an award only after determining that it is fair and reasonable." *See Yi Mei Ke*, 2021 WL 148751, at *13 (analyzing the exact same language). Plaintiff shall add language to the Notice that makes that point clear. Likewise, "although Plaintiff need not add detail regarding the specific costs and expenses that may be incurred in this litigation, the Court directs him to add language adequately conveying how costs will be handled in the event of a judgment against plaintiff(s)." *See id.*

Defendants also request that the Notice be modified such that the consent form be sent either to the Clerk of Court or Plaintiff's counsel, instead of only to the latter. (*See* Weinberger Decl. in Opp., Ex. B at 5, ECF No. 49.) As he does not oppose to this revision in his reply, Plaintiff shall include this revision in the Notice.

Defendants next ask to remove the immigration status reference because "there is no evidence of any claims involving immigration in Plaintiff's motion or threats to employees by the

Defendants." (Resp. in Opp'n at 31.) But courts have held that notices may include statements advising potential plaintiffs that they have a right to participate in the lawsuit regardless of immigration status. *See, e.g.*, *Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406 (VEC), 2018 WL 279756, at *7 (S.D.N.Y. Jan. 2, 2018) (approving language in notice referencing immigration status and anti-retaliation laws); *Gomez v. Terri Vegetarian LLC*, 17-CV-213 (JMF), 2017 WL 2628880, at *3 (S.D.N.Y. June 16, 2017) (granting conditional certification, but ordering that the proposed notice "be modified to advise recipients that their immigration status does not affect their entitlement to recover back wages or to participate in the lawsuit. . . ."); *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 Civ. 5119 (RA), 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) (approving language in notice regarding immigration status). Accordingly, as Plaintiff affirms that most of the potential plaintiffs in the collective class are foreign-born, the Court finds it appropriate to include such statement, as Plaintiff avers, to "deter many of them from pursuing their legal rights due to concern of their immigration status." (Reply at 12.)

Finally, as to including the contact information for Defendants' counsel in the Notice, the Court agrees with Plaintiff that it should not be included. To be sure, some "[c]ourts in this Circuit have generally concluded that [the contact information of defendants' counsel] is appropriate for inclusion in a notice of collective action." *Slamna v. API Rest. Corp.*, No. 12 CIV. 757 RWS, 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013). But the Court finds that such inclusion here, particularly in the section where Defendants request it to be placed (immediately before a discussion about substantive communications being presumed privileged and confidential information), may result in the inadvertent disclosure of material information between opt-in plaintiffs and Defendants' counsel, which could in turn result in an ethical violation.

B.     Opt-in Period and Reminder

The standard opt-in period in this Circuit, following conditional certification, is 60 days. *See Yap*, 146 F. Supp. 3d at 566–67 ("[c]ourts in this Circuit routinely restrict the opt-in period to sixty days") (quoting *Fa Ting Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at \*11 (E.D.N.Y. July 29, 2015) (collecting cases)). Courts adopt a 90-day opt-in period only where the parties agree or if special circumstances require it. *See Gui Zhen Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 272 (D. Conn. 2020).

Here, Plaintiff requests a longer opt-in period of 90 days because the delivery drivers identified in the affidavit "are foreign-born and their right to opt into the action may be delayed by foreign travel, and because of the current COVID-19 public health crisis." (Mot. at 29.) But Plaintiff provides no supporting evidence suggesting how or why any of the collective class members may be delayed by foreign travel in this case. That these potential plaintiffs are foreign-born does not by itself support the inference he asks the Court to make. Hence, the opt-in period here will remain 60 days. Notwithstanding, the Court grants Plaintiff's request to send reminders via mail and email halfway through the opt-in period. *See Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345 NRB, 2013 WL 5308004, at \*16 (S.D.N.Y. Sept. 20, 2013) (collecting cases).

C.     Methods of Notice

Plaintiff proposes sending the Notice to members of the collective in English, Chinese, and Spanish. (Mot. at 30.) "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (quoting *Colon v. Major Perry Street Corp.*, 2013 WL 3328223, at \*8 (S.D.N.Y. July 2, 2013)); *accord Sanchez*, 2014 WL 1998236, at \*5 (Spanish-language notice forms permitted). Here, Plaintiff attests that the other delivery drivers are all originally from China.

(Hong Aff. ¶¶ 34, 45, 56, 67, 78, 89.) As such, under these circumstances, the Court concludes that the Notice should be disseminated in both English and Chinese.

Further, as noted above, Plaintiff requests that the Court: (1) authorize Plaintiff's counsel to disseminate the Notice via mail, email, text message or social media chat, and on counsel's website and on social media groups; (2) authorize for the publication of two "QR codes" (Quick Response codes) on physical notices mailed to potential class members so that they can directly initiate communication with Plaintiffs' counsel, and download, sign, and submit the Notice electronically if they so choose; and (3) require Defendants to post the Notice in a conspicuous location in their restaurants and to include it in delivery drivers' pay envelopes.

The Court agrees that disseminating the Notice by mail, email, text message, and social media chat (addressed specifically to members of the proposed collective) is appropriate. *See Qiang Lu*, 447 F. Supp. 3d at 97 (permitting notice to be "disseminated in any relevant language via mail, email, text, or social media platform"); *Huer Huang v. Shanghai City Corp.*, 2020 WL 5849099, at *16 (S.D.N.Y. Oct. 1, 2020) (permitting notice on social media because "[s]ocial media is now used to convey all kinds of important messages to the populace and has become an important means of receiving information") (collecting cases). Similarly, posting the notice at Defendants' physical location is a generally acceptable form of distributing information related to such notices, and is therefore approved. *See Ni v. Red Tiger Dumpling House Inc*, No. CV193269GRBAKT, 2020 WL 7078533, at *12 (E.D.N.Y. Nov. 30, 2020) ("Courts in the Second Circuit 'regularly approve plaintiffs' requests to post notices and consent forms in 'non-public areas' where potential collective members are likely to congregate, such as clock-in stations or break rooms.'" (quoting *Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972 (JS) (AKT), 2018 WL 1581975, at *17 (E.D.N.Y. Mar. 30, 2018))).

However, the Court will not authorize Plaintiff's counsel to post a short form of the notice on public social media groups. Posting on social media and websites "would be overbroad and not likely to materially improve the chances of notice." *Mark v. Gawker Media LLC*, No. 13-cv-4347, 2014 WL 5557489, at *4 (S.D.N.Y. Nov. 3, 2014). The potential plaintiffs here are "likely to be reached and identified by other means, and any plaintiffs who cannot be reached will not have their legal rights altered by their inaction," whereas posting on social media groups and websites has the potential to prejudice Defendants. *Id.*

Moreover, the Court does not grant Plaintiff's requests to add QR codes, to use Defendants' logo, to post the notice on Plaintiff's counsel's website, or to distribute the notice through Defendants' pay envelopes. The Court is unpersuaded that such means are necessary, and shares many of the concerns expressed by other courts in the Second Circuit in response to such requests. *See Panora v. Deenora Corp.*, 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021) (strongly disapproving of plaintiff counsel's use of defendants' logo and QR codes); *Yi Mei Ke*, 2021 WL 148751, at *15 (denying plaintiff's counsel's request to include notice of pendency in defendants' employees pay envelopes because doing so "may suggest either that the notice originates with the employer or that filling it out may actually be required or expected by the employer"); *Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091 (SJF) (AKT), 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020) (denying request to post notice on plaintiff's counsel's website where plaintiff had not provided any justification for doing so). Accordingly, the Court denies these aspects of Plaintiff's proposal for disseminating the Notice are denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART, DENIES IN PART Plaintiff's motion for class certification. The Court GRANTS the motion with respect to the conditional certification of delivery drivers employed at Haiku in White Plains, New York on or after May 31, 2016. The Court DENIES the motion with respect to the conditional certification of the other non-managerial employees. Accordingly,

1. **On or before February 11, 2022**, Defendants shall produce to Plaintiff a spreadsheet, in Excel if possible, containing the names, last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, dates of employment, and positions of all delivery drivers employed at Haiku in White Plains, New York on or after May 31, 2016; and

2. **On or before February 18, 2022**, the parties shall, after meeting and conferring, prepare and submit to the Court, for approval, a revised form of notice (and related consent form) incorporating the Court's rulings delineated elsewhere in this order.

   The Court further directs the Clerk of Court to terminate the motions at ECF No. 46.

Dated: January 28, 2022
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge